THE NORTH JERSEY STREET RAILWAY COMPANY, PLAINTIFF IN ERROR, v. JACOB SCHWARTZ, DEFENDANT IN ERROR.

Submitted February 28, 1901—Decided June 10, 1901.

1. The general principle governing the relation of the street railway to the traveling public is that their respective rights in the public street must be exercised by each of them, with due regard to the rights of the other, in a reasonable and duly careful manner.
2. Where a traveler in a carriage at a public crossing was about to drive over the tracks of a street railway, and saw a trolley car bound towards him, but which, at the time, was standing still about forty feet away, taking on or letting off passengers, and thereupon he proceeded to drive over the tracks without further looking towards the car, which struck his horse while crossing, throwing the driver out and injuring him, in an action for the injury, a motion to nonsuit for contributory negligence was denied. *Held*, on review, that the ruling was correct.

---

On error to the Essex Circuit.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff in error, *MacSherry & Rees* and *Jarvis N. Atkinson.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

HENDRICKSON, J. The plaintiff below, while crossing the tracks of the defendant, a street railway company, situate in and along Springfield avenue, in the city of Newark, was thrown from his carriage, from the effect of a collision between it and one of defendant's trolley cars, suffering serious and permanent injuries. He brought suit in the Essex Circuit, and recovered a verdict and judgment for damages against the company, which has been brought to this court by a writ of error. The grounds for reversal are the refusals of the trial judge to grant a nonsuit, to direct a verdict for the defendant, and for alleged errors in the admission of testimony that was objected to.

At the close of the plaintiff's case the following facts were developed by the proofs: The plaintiff, with three other friends, took a drive on the afternoon of Christmas day, 1899, from Newark to Pleasantdale, returning about seven o'clock in the evening. They were in two carriages, both fall-tops, and they drove with the tops pushed down. In returning they approached the crossing of the railway on Springfield avenue through Jacob street, which runs north and south at right angles with the railway. They were traveling in a southerly direction, and were intending to drive over the crossing in front of Jacob street, which stops there, into Waverly avenue, which is practically a continuation of Jacob street further south. The lines of the two streets are not quite coterminous, those of Waverly avenue being slightly further north, so that a direct line from the center of Jacob street to the center of Waverly avenue would cross the tracks diagonally to a slight degree. There were two tracks, the one farthest from Jacob street being the eastbound track from Irvington to Newark, upon which the car in question was moving, going east. The distance from the curb at the

end of Jacob street to the nearest rail was sixteen feet, and the distance across both tracks from out to out was fifteen feet.

The two carriages were traveling in company. The one in front was occupied by two of the plaintiff's friends, while the plaintiff was driving the second carriage, with another of his friends with him. The first carriage had passed the tracks and gone from five to eight feet beyond when the collision of the car occurred with plaintiff's carriage, which was following close after the other. The plaintiff's horse was walking at the time. When within eight feet of the rails he looked north and saw the car distant about forty feet away, standing still, presumably to take on or let off passengers. Seeing this, he drove on across the tracks, looking no further at the car, and when his horse had passed the northbound track, and had just stepped over the first rail of the southbound track, the car struck his horse about the middle of the shaft. The force of the impact threw the horse around suddenly, and caused the plaintiff to fall from the carriage to the ground, between the two tracks, and he was carried away in an unconscious condition. The car was stopped after going half its length. A front window of the vestibule of the car was broken and the carriage was damaged. The plaintiff's companion was unharmed, and he afterwards gained control of the lines and brought the horse to a standstill after he had run for several blocks. The evidence was that it was getting dark and the car was lighted. The whole case shows that the parties and witnesses could see very plainly, presumably from artificial light in the street. The approach of the car was not signaled by bell or gong. These facts were sustained, in the main, by the concurrent evidence of all the occupants of the carriages.

The contention is that, in this state of the proofs, the plaintiff was so clearly negligent himself that the case should have been taken from the jury.

In determining this question we must keep in mind that we are dealing with parties who are on an absolute equality as to their rights to the use of the highway at the crossing

of public streets, except that allowance is to be made in favor of the street railway, because of the fixity of its tracks and its inability from that cause to change its course.

We have had occasion to refer to the mutual rights and duties that appertain to persons or corporations in propelling cars and other vehicles along the public highway in the case of Woodland *v.* North Jersey Street Railway Co., decided at the present term. It is unnecessary to repeat them again. The general principle is that where a railroad runs along the surface of a street the rights of the company and of travelers must each be exercised, with a due regard to the rights of the other, in a reasonable and duly careful manner. And what is reasonable care in such cases usually depends very largely upon the peculiar circumstances of each particular case. 3 *Ell. R. R.* 1094, and cases; *Connelly* v. *Trenton, &c., Co.,* 27 *Vroom* 700.

We might, in the present case, be willing to believe that the plaintiff was not as prudent as he should have been in attempting to cross with the car so near, at least without continuing to keep an eye to its movement as he passed over the tracks. But, in looking at all the circumstances, we must consider that, when near the tracks, he saw that the car was then standing still; that he had a right to rely upon the motorman's exercising reasonable care in controlling the movement of his car over a public crossing in a populous city, then being traversed by a carriage, with the plaintiff's carriage closely following; that the plaintiff was also required to drive his horse with care and look in front for other vehicles and to the east for westbound cars, with a view to avoid collision.

Now, when these circumstances are considered, could we say that plaintiff failed to exercise the care that a person ordinarily prudent would have exercised in a like situation? I feel bound to say that this question is, at least, a debatable one, and hence that it was properly submitted to the jury.

The authority of *Earle* v. *Consolidated Traction Co.,* 35 *Vroom* 573, has been appealed to as asserting a contrary doctrine. But that case was affirmed by a divided court, and is

plainly distinguishable. In that case the plaintiff, although he said that the car was moving to cross, undertook to drive over in front of it, relying upon his right to do so, because, as he claimed, he had reached the crossing-point first. But the court held that if the plaintiff said that his rights were not being observed by the motorman, he could not proceed without imprudence, and was bound to stop or turn aside, if he could by the exercise of due care, and protect himself from injury. Having failed to do this, he became chargeable with contributory negligence.

The evidence in this case tended to prove that the car had stopped some distance west of the Jacob street crossing, when plaintiff says he saw it, but even supposing it had reached the crossing ahead of the plaintiff, and that he was in fault in attempting to cross, still, upon the principle stated in *Earle* v. *Consolidated Traction Co., supra,* and further illustrated in Rafferty *v.* Erie Railroad Co., decided at the present term of this court, it became the duty of the motorman to exercise reasonable care in the use of the appliances at hand, to control the action of his car, and prevent the collision if he could. Whether he did his duty as thus prescribed or not was also a question for the jury.

At the close of the evidence on both sides the state of the case was altered only by the introduction of proofs somewhat contradictory to those of the plaintiff. They tended to show that plaintiff had driven on a trot and quite fast as he came from Jacob street on to the defendant's tracks, and that the horse ran into the fender and struck his head against the front vestibule of the car; that the car was moving slowly and stopped within a foot or two after the accident; that the motorman saw plaintiff driving over the westbound track, but thought he would stop or turn aside. It is unnecessary to state defendant's evidence in further detail, since it is apparent that these disputed facts were for the jury. There was no error in the denial of these motions.

The defendant assigns error also on the ground that the plaintiff was allowed to give evidence of the value of his ser-

vices five years previous to the cause of action. According to the record this evidence was not objected to.

After the evidence was in the court, in answer to counsel for defendant, expressed the opinion that the evidence was permissible, although a little remote, and counsel then asked and was allowed an exception. No motion was made to strike out this testimony. This exception must be overruled.

Another assignment of error is based upon an exception to the court's admission of evidence that plaintiff had to abandon a contract on account of his injuries, whereby he might have lost money on the contract. The plaintiff was permitted to testify, over objection, that, at the time of his injury, he had a contract to erect a brewery in the city of Newark, for $168,000, which he had to give up because of it, and turned the contract over to another man. This was not followed by any evidence to show that plaintiff lost anything or suffered any damage by giving up this contract. So that if there was any error in the admission of the evidence, it was harmless, and can work no reversal.

The only other assignment of error is based upon an exception to a hypothetical question, the ground stated being that it assumed the plaintiff to have been in good health, when there was no evidence to show that plaintiff was in such condition before the cause of action arose for which suit was brought.

Upon referring to the record, I find in the testimony of the plaintiff the following:

"*Q.* Before you were injured, what was your health?

"*A.* It was all right.

"*Q.* How were you as to being a man who was able to work?

"*A.* Sure.

"*Q.* Well, I am asking you?

"*A.* I do big work."

This evidence is clearly sufficient to sustain the part of the question objected to, and the exception must be overruled. Finding no error in the rulings of the learned trial judge, the judgment should be affirmed.